Thank you, Your Honor. Good afternoon, and may it please the Court. I'm Jennifer Garcia, and with me at council table is Dale Bache. We are from the Federal Public Defender's Office in Phoenix, and we represented Mr. Lambright in his most recent federal habeas proceedings, and we're representing him in this related litigation as well. At its heart, this appeal is about respondents' violation of a protective order that was issued by the District Court during the evidentiary hearing that was held in the District Court in 2003. In District Court, respondents have conceded that they violated the order and that the protected documents are in the possession of the Pima County Attorney's Office. Despite strenuous objections by Mr. Lambright to the violation and requests for sanctions and a remedy to the violation, the District Court – Your concern is what's going to happen to these materials. Can the county use them in the prosecution or not? And if they can or can't, it doesn't really depend on whether they turned it over, whether the State turned it over inadvertently or not. We don't even know that. I suppose the judge says, well, it was an error. That wouldn't – that wouldn't answer the question of whether the county can use these materials. Isn't that what we really – isn't that what's at the heart of this, whether they can use it? I think that you're right to some extent, Your Honor. I think the sanction that we were asking for as a result of the violation was to preclude the State from being able to use the documents against Mr. Lambright. We don't – I mean, in order to answer that question, you'd have to send it back and have the district judge determine whether the State really did this inadvertently or not. If they did it inadvertently and the county lawyer hasn't looked at them, then what? That doesn't get you to the point where they're forbidden to use them. No, Your Honor, it would not at that point. If that were to have happened and that was determined as a threshold issue, then I think we would agree that what should have gone on at that point was discussion of possible modification as the motion that respondents initially filed in this matter requested. But I think we have repeatedly said that we think the violation is a threshold determination because if the documents have already been disclosed in violation of the order, discussing whether or not the order should be modified is really – it's after the fact. The county attorney's office is already in possession of the documents. So really, I think the question becomes how do we fix that or do we or, you know, how did this all occur? And that's why we believe that was a threshold problem, because they already have that. So all you want us to do is send it back to the district judge to determine whether there was a violation or in what type of violation, whether it was intentional, not intentional. And that's all you want on this appeal? No, Your Honor. At this point, because the district court summarily denied our motion for order to show cause, this court has de novo review of the things that issue with the violation. So I think at this point, the district court record is clear that respondents have conceded that they violated it, and we know that the Pima County attorney's office has the documents. So I think at this point – But we don't know that they looked at the documents. The respondents have filed an affidavit by Mr. Unkelsby, who is the Pima County prosecutor who's prosecuting this case, and he has said that he has not reviewed the documents, although that affidavit doesn't cover other individuals in his office. For example, we know his secretary went through the documents in order to prepare an index for Mr. Lambright's state court lawyer, but as far as Mr. Unkelsby himself, the prosecutor on the case, is concerned, he's already said that he has not reviewed them yet. But what – I'm trying to find out what is it you want us to do, other than just remand to the district judge can determine what the sanctions should be. I think because the district court has already said that they denied the motion for order to show cause in our request for sanctions, that with the de novo review that this court could preclude the state from using the documents as a sanction. And that's what we would ask the court to do. And have it be a conclusion of use of the documents that would only be waivable by Mr. Lambright's state court counsel. If he chose to use certain of the documents, then he would waive the preclusion as to those documents. Use them where? In the pending resentencing proceedings, Your Honor. And those proceedings are essentially on hold, waiting for the litigation in this matter to conclude. So you don't want us to reach the basic question of – that would exist if the documents had not been sent and the judge had simply vacated the protective order. If this court feels that that's appropriate to address that, that's – we certainly understand that. And we – that's fine with us. I think that even if we were to move past the violation and talk simply about modification, I still think that what the district court did here was unreasonable. Based upon all the things that happened in the district court litigation, including the issuance of the protective order, the district court judges repeated assurances that there was no risk of this testimony or the documents at question being used against Mr. Lambright in a future proceeding. His assurance that he couldn't imagine the judge that would disregard the protective order and allow the documents to be used against Mr. Lambright, based on all of those assurances, the fact that the district court here has suddenly come up with four or five new bases for vacation of the protective order that were never discussed in the litigation below, I think is – that's clearly an error as well. And is there anything that was introduced at the hearing before the district court that you think is not protected by the law or the district – or the protective order? Well, the protective order expressly covers all discovery granted to respondents in this matter. We weren't counsel for Mr. Lambright at the time of the evidentiary hearing. We came – we were appointed to handle the appeal from that evidentiary hearing. But from what we can tell with the discovery, that would – and as the order itself expressly included, that would include the depositions and interviews of the mental health experts, the deposition of Mr. Lambright's trial counsel, the deposition of Mr. Lambright himself, and various other documents that were given to the mental health experts in question. And what about Mr. Lambright's testimony? I believe Mr. Lambright's testimony itself is also included in the protective order because while Mr. Lambright was on the stand testifying and the Fifth Amendment question came up again, Judge Rohl specifically and expressly stated to Mr. Lambright that there was not a risk of his testimony in this matter being used against him at a future proceeding. And that was in this question. So my question was, is that what went on in the district court proceeding is not protected, under your theory, if anything? I think that all discovery and the testimony is protected. I don't think that there is anything else that is not protected. All testimony by everybody and all discovery. I'm not sure the order would go so far as to cover all testimony. The assurance when Judge Rohl expanded the order to include testimony, he was talking specifically about Mr. Lambright's testimony. Well, that's what I'm trying to find out from you. What is it that is not covered? What is it that happened in the district court proceeding that you say is not covered by either the protective order or the law? I think probably the answer to that is only the testimony by the other witnesses aside from Mr. Lambright himself and Mr. Lambright's trial counsel. Well, in your brief, you also included the, I think it was the affidavit of Mr. Meinhardt. Your Honor, that was something that we included as being protective of Mr. Meinhardt, yes, because the Attorney General's office was able to procure that affidavit, but they only were able to do that investigation and locate Mr. Meinhardt based on evidence that they obtained during Mr. Lambright's deposition. All right. Thank you. Well, okay. I'm a little. Do you want sanctions now? We would, yes, Your Honor. We ask as a sanction that the State be precluded from using these documents against Mr. Meinhardt. But you want it as a sanction. Well, what about Judge Reinhardt's original question? I'm the new kid on the block here as far as this case is concerned. No, welcome. 27 years. What about his original question that there hasn't been any finding of whether this was inadvertent or deliberate and no real record on who has seen these? Yes, I agree, Your Honor, that there's not. We filed a motion that when the district court first alerted us to the fact that respondents had filed a motion to modify the protective order, and we contacted Mr. Lambright's state court lawyer to find out what was going on, our response, the first thing that we did was to file a motion for order to show cause. And we specifically requested that a hearing be held and that discovery be conducted to determine what the extent of the violation was and what the appropriate remedy for the violation was. And we also had asked that the proceedings regarding modification be stayed pending the outcome of that litigation. And the district court refused to stay the litigation and ordered us to respond to the modification motion. At that point, the respondents did file a respond to our motion for order to show cause, and we filed a reply. But the district court at this point has summarily denied it. So I think that all that is in evidence are pleadings by the parties in this matter. But, again, I say it's de novo review because the district court summarily denied the motion. What is it that the state did that's wrong here? It was the federal United States attorney or assistant United States attorney. It was his office or her office that turned the documents over. From what I've been able to read, a bunch of documents came into the state and the state received them. What did the state do that was wrong? Well, Your Honor, it's the Arizona Attorney General's Office that represents respondents in this matter, and they're the ones that turned the documents over to Pima County. I think for functional purposes in these proceedings, it is one entity, the state. But the Attorney General's Office, who still is a state entity, they were the ones that were bound by the protective order. Okay. So I think from there, when they violated the order and turned over the documents. Yes, Your Honor? Yeah. Go ahead. When they violated the order and turned over the documents, then at that point the issue really needed to be about the violation and what harm that caused to Mr. Lambright due to the protected nature of the documents and the reliance that he and his lawyers had on the documents after the protective order was issued. But I still am not understanding. How do we know what harm has been suffered, and how do we know the extent to which this was just inadvertent and there was no harm, no foul? Well, I think that if you look at the case that the district court has relied heavily on in this matter, Biddick v. Woodford, in that case the court made very clear that just the disclosure of privileged information caused prejudice to the defendant. And I think here it's the same situation. We have protected admissions and discussions by his trial lawyer, mental health reports, different questioning and strategy from his lawyers at the evidentiary hearing, and all that information is in the state's possession. And so I think if we wait until the point where the state uses the documents in the county's possession, I think if we are going to wait to the point until the county actually uses the documents in the prosecution against Mr. Lambright to determine harm, you end up in the classic situation, the cat's out of the bag, the egg can't be unscrambled. Once the county reads the documents and uses them, then there's nothing that can be done to restore Mr. Lambright. Why can't we get the documents back to the attorney general? And we have been asking for that since the time the district court pleadings. And as far as we know, the attorney general's office, aside from getting the affidavit from Mr. Ontelski that he had not at that time read the documents, has not made any effort to modify. And in fact, when they were notified of the violation, they still didn't do anything to remedy the violation. They didn't notify the district court of the violation. They didn't notify us. Instead, what they did was file a motion to modify that contained no information about the fact that all these documents were already in the possession of the county attorney's office. And their motion to modify even accepted from the modification Mr. Lambright's own deposition, which is yet another thing the county attorney's office already has. Respondents didn't make any attempt to say how they were going to get the deposition back or what they would do to protect it, even though it was already in the possession of the county attorney's office. It just – it's very – the pleadings that have occurred in this matter really are not reflective of honest brokering of the situation. Would you have complete relief if they returned everything to the State? I think at that point it would be a question of determining whether there had been any other disclosure of the documents, if other people in the Pima County attorney's office or other – you know, who else had looked at the documents and if that information was out there or not. Well, what do you want us to do? We would ask that you preclude the State from using the documents. Mr. Lambright. Preclude the county? The county. County. Yes. I'm sorry. That's the county. And is there anything we're supposed to do about the district court's order vacating the protective order? Well, of course we – I would ask that the court overturn that order vacating the protective order. But I think that that depends on whether you're going to preclude use of the documents as a threshold question or if you're going to get into the question of whether modification was proper. And I think either way, I think that Mr. Lambright's rights would have to prevail here. The district court really had no reasoned basis for vacating the order or for modifying it. I think that in its initial order, in the December 2008 order, the district court improperly shifted the burden to identifying and discussing why the documents should be privileged to us. It severely limited the arguments that we could make regarding why documents should remain protected. It told us that we couldn't ask for more time in which to file the documents and stated already that it planned to modify the protective order. So really, Mr. Lambright's never been given the opportunity to fairly litigate that. And when Mr. Lambright filed the notice of appeal from that and the district court chose to file a second order because it believed it still had jurisdiction over the case, in that order, somehow there are all these new justifications for why the order should be vacated, things that were never brought up at any point in the previous litigation. So I think clearly that both those orders are erroneous and should be overturned. Okay. Anything else? If that's all, then I'll save my remaining time for rebuttal. Your first state. May it please the court. My name is Kent Pitani. I'm with the Arizona Attorney General's Office. The district court did have a reasoned basis for lifting the order. In this case, the district court gave Mr. Lambright's counsel an opportunity to explain what information was privileged that needed to remain confidential. They provided no indication of any privileged material that needed to remain protected. So the first reason is that there really wasn't privileged material. The second reason is that there was really no reliance on the part of Mr. Lambright's counsel that the materials that were developed during the district court proceedings would remain confidential. Mr. Lambright's counsel sought a protective order to prevent him from being deposed about the facts and circumstances of the crime. And the repeated assurances that the court gave, the only repeated assurances that the court gave were that if Mr. Lambright were to testify about the facts and circumstances of the crime, that that testimony would remain protected. Mr. Lambright chose not to testify about the facts and circumstances of the crime. But the Fifth Amendment protections, the court did say that the Fifth Amendment protections would be preserved and were not being waived because he testified. He thought that the Fifth Amendment applied only to testimony about the crime and  Well, Mr. Lambright did this long before he sought a protective order. And again, he only sought a protective order as to his testimony about the facts and circumstances. The court issued this protective order after the Biddeker decision came out, and I think just pulled the language from Biddeker. But there was really no question that Lambright had waived any Fifth Amendment. There's no Fifth Amendment violation when the defendant puts his mental health at issue. This is not Estelle v. Smith where there's a court-ordered evaluation. This is Mr. Lambright putting his mental health at issue, and he did that long before this protective order issued. So there's no privileged materials with regard to his mental health. Let's assume that he puts mental health at issue whenever. If you're trying to protect a defendant who's seeking relief from an unconstitutional trial or unconstitutional proceeding. And in order to do that, he has to establish the mental health issue. That's – doesn't Biddeker say that we can't take advantage of the fact that in order to get his constitutional rights, he had to divulge information about the mental health? Biddeker deals with the attorney-client privilege. Right. It doesn't deal with the Fifth Amendment. Right. And there's simply no Fifth Amendment privilege when you put your mental health at issue. So it's – that's a difference. And Biddeker is prior to a hearing, the protective order being issued. And it doesn't necessarily address after the hearing, after the defendant has gone through and decided what claims to present at the hearing and had the hearing, whether the protective order should be lifted at that point. Again – You're saying that Biddeker wasn't Fifth Amendment. Biddeker was attorney-client privilege. The judge seemed to recognize that the Fifth Amendment privilege should receive the same treatment as the attorney-client privilege. Well, I would disagree with that. And when you look at the discussion during the hearing about whether Mr. Lambright would testify, it was clear that Mr. Lambright's own attorney thought that the protective order only applied to discovery and, in fact, did not apply to anything that was presented at the hearing. And – Didn't the judge say that if he testified about the crime – Right. But that's the only – he didn't say everything else. No. He said the Fifth Amendment privilege applies. And if you testify about the crime, that won't be used against you. Well, he didn't say the Fifth Amendment privilege applies. He simply said as to that part of the protective order, if Mr. Lambright testifies regarding the facts and circumstances of the crime, that will remain protected. I thought he specifically talked about the Fifth Amendment. But he certainly did not lead – He didn't mention the Fifth Amendment. No. He did not lead anyone to believe that any other aspect of the protective order or of the discovery order would necessarily remain in place forever. He made that clear. No, I didn't say about what he said about remaining. When he talked about the privileges, I said I thought he mentioned the Fifth Amendment. He may have mentioned the Fifth Amendment. I don't recall specifically if he used those words. But it was clear that the only thing they were talking about was Lambright's testimony regarding the facts and circumstances of the crime. And why was that protected? It was – I think it was just a balancing that the court decided to do. I don't know that it should have been protected. If he put his mental health at issue, I don't think it is protected in any way. But that was the only – and this just goes to the reliance on Lambright and his counsel in terms of what he can expect afterwards. And when you look at that testimony or the colloquy that goes on, Lambright's counsel is saying I don't think the protective order applies to anything once we put it – once we introduce it at the evidentiary hearing. And the judge said you're wrong. You're wrong as to facts and circumstances of the crime. So I think anyone reading that transcript would think, well, the only thing that's going to be protected when this is all over is testimony regarding the facts and circumstances of the crime. And Lambright chose not to answer those questions. So the – this goes to how egregious a violation it is. Well, I guess I'm not understanding your point. Are you saying that beyond any testimony concerning the facts and circumstances of the crime, everything is fair game and it can be used for any purpose, no matter how you – by the county? Well, I think the focus in Whitaker is on privileged information, privileged material. And so you have to look and say what's privileged? And in terms of – it's, I guess, taking a step back. Is it covered by the protective order? Arguably it is. But in looking, should we keep that protective order in place? Should we lift it? Are we talking about privileged material, privileged information? And nothing having to do with his mental health is privileged. It's not covered under the Fifth Amendment. Why isn't it covered under the Fifth Amendment? Because he chose to put his mental health at issue. So there's no privilege at that point. The Fifth Amendment does not apply. It's Estelle v. Smith that talks about when the – But for – at issue, for what purpose? Because that's what – What I'm talking about, though, is, is there – was there privileged information that was disclosed during these proceedings, particularly in reliance on the protective order? He had already – Well, you're combining things. You're talking about the Fifth Amendment. Why isn't the Fifth Amendment – you seem to feel and the judge seemed to feel the Fifth Amendment applied only to circumstances of the crime. Is that right? Well, I don't think it even applies to that. I think the judge was just giving – was just agreeing to keep confidential that type of testimony. He gave us something more than he would really be entitled to. And the State didn't – obviously, that's not an issue. He chose not to – not to offer any testimony about the facts and circumstances of the crime. Well, if the Fifth Amendment applies to more than the circumstances of the crime, such as the evidence that could increase your penalty, do you have a problem with that? Well, this is not evidence that would increase the penalty. This is Mr. Lambright putting forth – trying to offer evidence, and this is the State – if he chooses to do that, the State's entitled to rebut it. That's the critical distinction with Estelle. So then the State wouldn't want to use any of this evidence that would help Mr. Lambright. Unless Mr. Lambright puts his mental health at issue. No, no, no, no. I'm saying he said all this evidence is something that only helps Mr. Lambright. No. What I'm suggesting is it's the mental health evidence. If he puts that at issue, he's put in some things the State's entitled to rebut that. Yeah. Well, did you have a chance to rebut it? Sure. In the – in the evidence you're hearing, sure, in district court. Well, then what's the – I don't understand the significance of the fact that you're entitled to rebut it. You didn't. The question is whether you can use it in another hearing. Well, yes. But I guess going back, absent this protective order, there would be no question that this information could be used in a subsequent hearing. That's the point I'm trying – I guess I'm not making very clearly. If the protective order had never issued, we would – there would be no question that anything that had been – that had been brought forward during this proceeding could be used in a subsequent – a subsequent resentencing. Well, now, by that you mean that the State would attempt, I guess, to put that information before the trier of fact on resentencing, and Mr. Lambright would claim a privilege of some sort, and then that would be resolved by the State trier of fact. Right. And I'm not aware of any privilege that he could assert as to any of the evidence. So if there had never been this hearing to issue a protective order, and the protective order had never been issued, as I indicated before, that probably is the way it would then unfold with the State offering the evidence, Lambright claiming a privilege. Right. But it would actually unfold with Lambright, again, putting his mental health at issue in the resentencing, and then the State using some of the same evidence to rebut whatever he put in. And Lambright would assert a privilege to keep it out of evidence, whether the – Just under State law, there's no privilege if you're putting your mental health at issue. Well, whatever it is, the State would decide. Right. It's a State crime. Right, the State would decide. And the State would decide that. Now, what we've had is this ineffective assistance of counsel proceeding in the federal court. Is there anything from that proceeding that the State could use in the resentencing hearing? Well, yes. That's the whole – the entire hearing went to ineffective assistance of counsel. And that's the point. I mean, again, so going back a step, absent this protective order, everything that came out in this hearing regarding ineffective assistance is out there. It's available to the State. It's available to Lambright to use as they choose. The State could make a decision if Lambright wants to claim some sort of privilege. So the only reason we would even be talking about this is because the district court issued a protective order in this case. When you might be talking about it later on in life, the State court might say, yes, you can use everything that came out of that proceeding. And then Mr. Lambright would have you back in federal court saying that the purpose of these hearings, just like a Fourth Amendment case, that the defendant is entitled to introduce this evidence to vindicate his constitutional rights without being penalized for it by having it used against him in the trial. That's what we do with the Fourth Amendment. And Mr. Lambright would undoubtedly be saying, if the State court said, no, no, we don't care why you said these things in federal court or what privileges this may violate in trying to vindicate your rights. We're going to let the State put it in. And then you'd be back here when Mr. Lambright said they're violating our right by using things from a federal proceeding that are not supposed to be used against me. I'm just unaware of any rule that prevents. Well, the Biddeker says. Biddeker says that's the whole purpose. Biddeker deals with privilege information. And where, since the Fifth Amendment privilege does not apply here, the only privilege information we would be talking about is attorney-client privilege. And again, Lambright's counsel was given an opportunity to identify privileged information. Well, that was later. That was after he thought he had a right to appeal because he construed the order as a final order, and he thought that he could appeal, so he did appeal. And then the judge said, well, now tell me what specifically you're complaining about, and he thought the judge didn't have authority. That's where he didn't answer the judge's questions, because he thought that there was a – the judge did not have jurisdiction. I would submit that there is no privileged information here, and that's – and they've been given an opportunity to identify it. I don't understand why you want to use this information if – I mean, what it is that you can't just present, you know, just develop the information and present. Why do you need this information that you say is all supposed to be helpful to Lambright? Well, one of the – one of the rationales for lifting a protective order is to avoid duplicate discovery. And where there's no privileged material, the case law talks about where the – the focus is on the reliance on an order from the court. If the – but for this protective order, the defendant would not have presented this information in federal court. We want to protect him. Is that in habeas cases, criminal cases? Well, in Biddeker. Biddeker's talking about but for the protective order, we want to protect the defendant if but for this order, he would not – without this promise of confidentiality, he would not bring this information to the court. And that's not what we have here. He – he made this – he made this allegation, this mental health allegation, before he sought a protective order. And he didn't seek a protective order to protect any of that information. He only sought the protective order to protect his testimony regarding the facts and circumstances of the crime. So there's this – Well, I – you know, I'm not saying that Biddeker – I mean that – I'm sorry. Lambright improves his legal representation from the time he said there was ineffective assistance to the time he handled this proceeding. But what Biddeker says is if a prisoner is successful in persuading a federal court to grant the writ, the court should aim to restore him to the position he would have occupied had the first trial been constitutionally error-free. Now, that means that the information that you develop, it does not restore him to the position he was in. That's new, damaging information that you develop while he's trying to vindicate his constitutional right. Well, I don't think damaging information is synonymous with privileged information. And I think the focus in Biddeker is on privileged information. And I guess that's – that's the primary concern. And, again, when this order was issued initially, they specifically said the parties will have a chance to revisit it at the – at the conclusion of the proceedings. So there – and the Biddeker order provides for that as well. And the rationale for allowing that is then when you go back through, and the district court did a good job of going through and saying, if you look at the material that's being sought to use, what was the extent of the reliance on the – on the protective order in using it, and will it just result in duplicative discovery? And, too, there's no privilege of material. There was no reliance on Lambright's part in presenting it at the evidentiary hearing. He thought the order only applied to discovery, not to the evidentiary hearing. And it would just result in duplicative discovery. So absent – absent privileged information that's being disclosed, there's no real good reason, and the district court certainly did not abuse its discretion by – by lifting the protective order. Okay. Well, let me – I just – I'm not quite sure what we're arguing about. If in the – in the ineffective assistance of counsel hearing, the – the information came out that the defendant had told his lawyer that there were five different witnesses to the crime, or there was an alibi here, or what – and the claim is that the attorney didn't investigate this, and that, therefore, he was – had ineffective assistance of counsel. And you're saying all of that would be privileged, and you couldn't use those witnesses or bring them out in a retrial. Yes. If he were to demonstrate that there was privileged information that came out during these proceedings, then that would be protected, and – I mean, that would be an example of privilege. Yes. And the district court – that's why the district court specifically said, please – please explain. What information do you believe is subject to a privilege? I'm not just going to – this protective order is overly broad. It just theoretically covers anything and everything. And he said, identify privileged information. And they didn't identify anything. Well, as I understand it, there was an appeal somewhere in there that kind of messed things up, and they thought that the – that the matter was gone from the district court. Right. But they got this order from the district court, and they had an opportunity to respond and say, this is what's privileged. And I've read through the Lambright's testimony. I didn't see anything in Lambright's testimony that's privileged. There's nothing – no discussions about what I talked to counsel about with regard to the facts and circumstances of the crime or any kind of strategy. I'm just not aware of any privileged information that's a concern. And they haven't identified it. They were given an opportunity to identify it. Well, what is it that the county wants to use, then? The mental health reports, the – and most of which commenced with – That were prepared for whom? That were prepared both for Lambright and for the state. And those started before the protective order. There was no request for a protective order. He was examined by his own expert, Dr. Moran's, and he was examined by the state's expert, Dr. Lange, long before he sought this protective order. And again, he only went in asking, I want my – I don't want to be deposed. He actually went in and asked that the court order that the state not be permitted to depose him. And the whole focus of his request was simply, I shouldn't have to talk about the facts and circumstances of the crime because there's a chance I'm going to be resentenced. But there was no – this order just kind of came out of not necessarily left field, but because the Biddeker decision was out there, it's – we're just going to put this in place if someone wants to come and ask for it to be lifted. But I think it's important to consider that context. This really wasn't – Lambright's counsel wasn't relying on this order before starting to develop a claim relating to Lambright's mental health. He had done that long before this protective order was put in place. So there's absolutely zero reliance on the protective order, particularly when you get to the evidentiary hearing and Lambright's counsel says, I'm going to instruct him not to testify. The district court judge says, well, I've told you if he testifies about the facts and circumstances of the crime, that will remain protected. The defense lawyer says, well, I think that protective order only applies to discovery, not the evidentiary hearing, so I'm going to instruct him not to testify. So there's clearly no reliance. And the judge says – the judge says any judge that would say that this answer isn't privileged and can be used isn't much of a judge. Yeah. As to that – as to that narrow type of testimony. That's because the judge thought that the Fifth Amendment protected only questions relating to the crime. He didn't think the Sixth Amendment – Fifth Amendment applied to things that could be harmful in sentencing. Well, it certainly does not apply when the defendant puts his mental health at issue. All right. Well, we keep coming back to that. The – I guess I don't really have – in terms of the sanctions issue, this was – this was something – we've explained it. The county attorney's office submitted an affidavit saying they will not look at the materials until it's been produced. There's nothing that would keep – would have kept the county attorney's office from going to the court and getting the full transcript of the evidentiary hearing, including all of the exhibits, that contains almost all of this information. And that's – that's part of what the district court was saying at the end, that this – this – everything that's in open court is available to the public. There's no – there's no protective order that would keep the county attorney's office from seeing this information. They haven't identified anything that's privileged. And seeing it is different than using it. But in terms of is – how egregious is this offense? And, again, I – and I take responsibility for the disclosure. I'm – I was the chief counsel at the time. And we have – we have a new policy in place. Anytime there's a protective order, we put it in a different place, in a separate file, and a note in that file. But just by way of explanation, again, not as an excuse, at the time I was aware that Lambright had sought a protective order relating to his testimony about the facts and circumstances of the crime. I was also aware that he chose not to testify. There was nothing that jumped out at us. And I didn't go through the file to look and see if there was a protective order. I knew that he wanted that testimony protected. And I knew that he chose not to testify. And the attorney who handled the case had left the office. And that's just by way of background. Again, I'm not trying to suggest that we – it's something we obviously don't want to have happen again. But there's nothing nefarious about what happened here. What's been disclosed is not privileged information. There's no attorney-client. They haven't identified any attorney-client information. If they have a claim relating to a Fifth Amendment privilege, they can still assert it at the – in state court. If that's a legitimate claim, there's nothing that would prevent him from keeping it out on Fifth Amendment grounds. The question is just, are we going to make the state go through duplicative discovery when they were specifically told up front they could come in and modify this protective order? There was no reliance on their part in – What duplicative discovery are you benefiting from? Avoiding what? What do you have to do that's so important that we have you avoid the same discovery? Well, this goes – if he puts his mental health at issue, that he would have to be examined – reexamined by all of these experts. And there's really no good reason. There's no – since there's no privilege, there's no good reason. You just want to take a shortcut. Pardon me? You want to take a shortcut. No. It's simply that Mr. Lambright put his mental health at issue, and so that's – everything becomes fair game when you do that. And, again, this is just completely different. I don't know where you get that idea that if he – if in a – Proceeding. I would start with the proposition, as I indicated earlier, if he had not sought a protective order, there would be no question that this information would be available to be used at resentencing. So if we start from that proposition that – Well, I'm not sure I'd start from that proposition. Well, that's the basis of my argument. So if that's wrong, then I'm wrong altogether. No, no. But I don't think we have to reach that issue, but I wouldn't say that. But it's important because if that's the – if that's the basic premise, that everything is fair game that's developed in any proceeding, it can be used later, he has to seek a protective order. And then this analysis in Bitteker was, well, we want him to be able to present evidence that he would not otherwise present absent some assurance that it will be kept protected. And so that's the focus here where Lambright wasn't concerned about – So the waiver of the privilege there was held to be only for purposes of the habeas proceeding. In Bitteker? Yeah. Well, there's been no one who's come back to ask for the – That's what it held. Right. But it's to protect him so he can use privileged information there and be assured that – I'm not going to introduce this unless I can be assured that it will not be used against me subsequently. Right. And here we don't have that. We had him already going through and going forward with mental health examinations long before he sought a protective order. The only thing he wanted it for was his testimony. The judge issues this order, says you can come back and we can lift it. His testimony where? His testimony both during his deposition and at the evidentiary hearing as to the facts and circumstances of the crime. He did the same thing during his deposition and during the evidentiary hearing. He refused to answer any questions about the crime or about his state of mind at the time of the crime. And I apologize for making what seem to be circular arguments, but that's essentially the best I have. I think it's clear that the district court did not abuse its discretion because there simply is not privileged information. Lambright was given an opportunity. And, again, the defense attorney who's currently handling this case in Pima County, he didn't say you can't use that. He agrees that it's relevant. And he said it looks like we'll have to file a motion to lift the protective order. He didn't say, and if he wants to, he can argue in state court as to why this should or should not be admitted. And that, I would submit, is when this court or any other court, certainly the trial court, the Arizona Supreme Court, will have an opportunity to address whether the information that's used during the resentencing is somehow privileged and should not have been admitted. And I just don't think that has, that's not a decision that you need to reach in terms of whether this protective order should have been lifted. The factors that the district court lists, I think, are logical. Is it really privileged? Was there reliance? Would he, but for this order, would he have introduced it? Let's just assume we said to the district judge, reinstate the order. I'm sorry? Let's assume they reinstate the order? Yeah. Okay. What would you do then? Reinstate the order? The order specifically authorizes the parties to come in and so you're saying we can't come in and not? And let's assume the district court said, yeah, you were right, that was a mistake, I'll reinstate the order. Then how would you proceed in the state court? Well, the county attorney will be handling it. They'll have to repeat all the discovery that was done in February. Do you think all the discovery will then be protected? No, the discovery will not be protected. Well, then why would he have to repeat it all? I'm sorry, which discovery? Well, I don't know. First, he said all the discovery. He said he would have to do it all all over. Well, that's, this protective order is, that's what Lambrecht's current counsel is reading it so broadly to say that it was developed and you can read it that way. It says it's anything that was developed as a result of anything that's happening here in these proceedings will remain confidential. So you're saying basically I guess you don't know what the state, what the county attorney would do, how much he would introduce, how much he would have to duplicate. No, that would depend on what Lambrecht chooses to introduce in evidence. Although he's made it clear that Lambrecht is going to put his mental health at issue. That's why he said, I agree, the information in federal court is relevant. He didn't say it's relevant and it's privileged and should not be admitted. He just said it's relevant. So it looks like we need to file a motion to lift the protective order. Lambrecht's current counsel is the one who needs to make any kind of objection as to how, whether this information should or should not be used. But that's simply a different question than whether this protective order, which was overly broad in the first place, should be modified. Their implicit argument now is that there's no, you should never under any circumstances lift a protective order, even though you've said that the parties can come in and do it. And sorry to ramble, but one point, the more typical situation when parties are engaging in discovery, it's before, and you want to protect discovery, it's before the defendant actually makes a decision as to what to put forward at trial or in a hearing. A defendant can choose not to put his mental health at issue. If he does that, then none of this becomes relevant and it would never be disclosed to anyone. So that's the value of a protective order. But if the defendant does choose to put his mental health at issue, and that's, again, a situation you have in Biddeker because it's prior to the hearing. We don't know exactly what he's going to do. We want him to be able to do discovery and he can make the decision, okay, I've got all this information. If I introduce it, it will come out and the state will have a chance to rebut it. If I choose not to introduce it, I don't have to show it to anybody. But that's a different story than after the hearing where you've decided to put your mental health at issue. It's now there and there's simply no privilege. Okay. Your time has expired. All right. Thank you, Your Honor. There are a couple issues I would like to address based on the arguments that respondents just made. First and foremost, I certainly object to the respondents attempting to speak for Mr. Lambright's current state court lawyers. As far as I know from my conversations with him, he has never conceded that these documents were relevant and should be used or that the protective order should be modified. I believe when he discovered the violation, he brought it to the county attorney's attention that the order had been violated. And he did, I think, agree, as everyone does, that absent a protective order, those materials might be something that could come in. But I think the words absent a protective order are what is really the important thing here. Respondents just said that numerous times. Absent a protective order, this information would be at play. We are not absent a protective order here. There was a protective order. That protective order was modeled on the protective order that was approved in Biddeker. And it really seems that both the district court and respondents want to pick and choose from Biddeker what language they accept from there. The order in our case is very similar to the order in Biddeker. However, Biddeker specifically discusses that once such an order is issued, that the district court must, in issuing the order, strictly delineate what the parameters of the order are, and then strictly police those limits thereafter. I think Biddeker was very clear that this is not a situation, despite language about potential modification, this is not a situation where the district court can issue an order, allow discovery of privileged or protected information to go on, allow the attorneys to rely on the existence of this order, and then simply withdraw it at the end of the proceedings. Really — Mr. Garcia, if I may. Yes, Your Honor. Did Mr. Lambright rely on the protective order? Yes, Your Honor. In what way? Because while respondents are correct that the discovery process began prior to the protective order litigation, this isn't a question of Mr. Lambright refusing to engage in discovery. Of course, he wanted to prosecute his ineffective assistance of counsel claim. The issue here is that once the order was placed, that was so broad, and yes, it was broad, but that was based on the district court's own authority. Mr. Lambright didn't include specific information for protective order, and neither did respondents. How did he rely on it? Because after that order was issued in the end of September of 2003, numerous very important events for the hearing took place. The deposition of Mr. Lambright himself, the deposition of his trial lawyer. But he didn't testify to anything about the crime itself. For the most part, he did not, Your Honor. Did he at all? I think there were some questions that he answered that were sort of contextual around the time of the crime. Did he answer questions that would be used against him in establishing the punishment he'd received? I think that there were some questions that would be problematic. I think there was some discussion about. Well, the district courts seemed to want to hear about that, at least gave Mr. Lambright an opportunity to raise those questions so the court would know how to narrow or how to tailor the modified order. And Lambright wouldn't participate in that. And now he's contending, well, you vacated it. That's way too broad. And because that veins as if we never had the order, or at least it's vacated as of a certain date forward. Yes, Your Honor. I think an important thing to clarify here, this really wasn't a question of Lambright or his counsel refusing to participate in the modification discussion. I think our concern was that there was a violation of the protective order that hadn't been addressed. And in the December order, the district court conclusively stated that it intended to modify the order without ever reaching questions about reliance or the questions of the violation. So at that point, we filed notice of appeal because we felt that those were threshold matters that had to be determined. And we had a conclusive statement that regardless of all the arguments that we had made, the district court was going to modify the order. You see, it's just a little strange to me to have a defendant take a position, I should have been given an opportunity to object to this kind of a very broad order. Well, the defendant was given the opportunity. He chose not to take advantage of it. And now you say, well, we can take advantage of his failure to take advantage of it. Your Honor, I don't think that that's what we're doing here. I think we're not trying to say that we weren't given any opportunity. I think what we said is that we weren't given a fair opportunity. The burden was pushed on us when it shouldn't have properly been on us. But you're the ones that wanted to keep part of this secret, if you will. You're right, Your Honor. And I think when you're asserting a privilege, it is the party asserting the privilege that has the burden of establishing that. But discussions about privilege and what should be involved in the protective order had been established back in 2003. At that point, our – I absolutely think that our burden was gone. We had made arguments regarding the need for a protective order. The district court had issued one. Yes, it was broad. That wasn't because of anything Mr. Lambright said or Respondent said. It was the district court's choice to make it be that broad. The district court took every opportunity to reassure Mr. Lambright's lawyers and Mr. Lambright that the protective order would hold up. And so, yes. I guess your position is you didn't have to. You were not required to make any particular showing of what was protected by the protective order and what wasn't because you took the position that the whole thing should remain in force. I think our position, yes, Your Honor. I think that's very, very close. I think our position is that the documents were already protected. We had already been given that in the protective order. So now the moving party should have had to justify why they should no longer be protected. I think it's a difference in whose job it is to delineate the documents. Okay. Another thing that I think is an important thing to discover or to discuss is that the protective order, as much as Respondents have talked about here, the fact that Mr. Lambright didn't end up talking about or answering all the questions about the crime or the specific details, the protective order was not limited to that. There's no language in the protective order and no language in any of the transcripts that say this protective order is in force only if you do what I want, only if you agree to testify about the crime. And context, I think, is so important here because this wasn't even a normal situation in which these matters might arise because of an ineffective assistance of counsel proceeding. This hearing and all the protective order litigation took place in a specific window of time in which this Court had granted Warren Summerlin's habeas petition on grounds that Ring was retroactive. So at the time that all this was going on, it was before the Supreme Court had accepted cert. So at the time, Mr. Lambright had every reason to believe he was already entitled to resentencing on a different issue. He had asked the district court to stay the proceedings pending ultimate resolution of Summerlin, and the district court had refused and said that they needed to go forward. So I think then he was worried about making the State's case an aggravation for them by putting forth all this testimony about what the crime was, since, of course, the State would have to reprove aggravators at a resentencing proceeding. So I think the context means everything. I mean, not only are there issues in a regular case, but there were heightened issues here because of the context in which the hearing took place. All right. If there's no other questions, then I'm happy. I don't appear to be any. Okay. Thank you. Yay. Thank you. I'd like to offer a comment. I think both arguments were very good. You are both very good lawyers. I'm quite impressed by both. Thank you, Your Honor. Let's hear it for Arizona lawyers. The matter just argued is submitted for decision. That concludes the Court's calendar, and the Court stands adjourned. Thank you.
judges: Schroeder, Reinhardt, Thompson